UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )  Crim. No. 5-73-B-JAW |
| | ) |
| CHRISTOPHER SMITH, | ) |
| | ) |
| Defendant. | ) |

### RECOMMENDED DECISION ON MOTION TO SUPPRESS
### AND SUPPLEMENTAL MOTION TO SUPPRESS AND DISMISS

    Christopher Smith is currently charged in a one-count indictment with violating Sections 922(a)(6) and 924(a)(2) of Title 18 of the United States Code, by knowingly making a false statement on ATF Form 4473 in connection with an attempt to purchase a handgun, when he answered "No" to a question regarding whether he had ever been committed to a mental institution. Smith has filed two pretrial motions. The first motion seeks suppression of police reports obtained from the Bangor Police Department and a "blue paper"[1] disclosed to the Government by Acadia Hospital pursuant to an order of this Court. The second motion is a supplemental motion to suppress the blue paper application and it also requests dismissal of the charges as a sanction for the Government's alleged violation of Section 290dd-2 of Title 42 of the United States Code and regulations promulgated thereunder pertaining to the confidentiality of alcohol and drug abuse patient records. I recommend the Court adopt the following factual statement and deny both motions.

---

[1]     Pursuant to Maine law an application for involuntary commitment is made through a three-part process, requiring the signatures of three separate endorsers: an applicant, a certifying examiner, and a judicial officer. See 34-B M.R.S.A. § 3863. The form used to complete this process is commonly blue in color, hence it is referred to as a "blue paper."

## FACTUAL STATEMENT[2]

On July 20, 2005, Erik Tall, a Bangor police detective assigned to an ATF Task Force, received an ATF Form 4473 completed in the name of and signed by Christopher Smith (d/o/b: 8/5/84). The Form 4473 was received from Orlando Frati FFL d/b/a Frati the Pawnbrokers at 55 State Street in Bangor, Maine. On the form, Mr. Smith indicated that he wanted to purchase a handgun. (Tall Aff. ¶ 1, Docket No. 24, Ex. A.) Smith did not, however, indicate that he had been previously involuntarily committed. (Id. ¶ 3.) On July 20, 2005, Tall reviewed computer records maintained by the Bangor Police Department and, based on his review of those records, he determined that Smith had been "transported" by two Bangor police officers on April 2, 2005. (Id. ¶ 4.) On July 20, 2005, Tall obtained a copy of a Bangor Police Department report that was prepared by Officer Russell Twaddell on April 2, 2005. The report indicated that Smith was transported from Eastern Maine Medical Center (EMMC) to Acadia Hospital for involuntary committal. Attached to the report was an EMMC inpatient face sheet completed in the name of Christopher Smith. (Id. ¶ 5.)

---

2      The Government presented as its factual record the affidavit of Officer Erik Tall, which was submitted to me in support of the Government's Motion for Disclosure of Commitment Records and to Seal in connection with grand jury proceedings, and a sealed copy of the commitment paper, a/k/a the "blue paper." (See Doc. No. 24, Ex. A & B.) I have adopted those facts as the only facts necessary for resolution of this motion. I agree with the Government that there has been no factual showing that any material facts are in dispute regarding what Officer Tall did to obtain the Order of Disclosure. The questions presented by these motions are issues of law. In response to the Government's position that no evidentiary hearing is warranted, defendant submitted the following:

> Mr. Smith need not make factual showing to obtain suppression hearing where facts supporting motion to suppress are provided by the government in discovery. The documents and testimony that support Mr. Smith's suppression arguments were provided by the government through discovery. As such, it makes little sense for the government to insist on defense affidavits, especially where, as in this case, the evidence at issue is central to the government's case at trial.

(Def.'s Reply at 1-2, Docket No. 29.) I am not sure if the defendant is suggesting that an evidentiary hearing is warranted or not. To the extent he is arguing that he is entitled to have this motion decided upon its merits, I agree with him. To the extent he is suggesting that an evidentiary hearing should be convened, I fail to see the point.

On July 25, 2005, Tall interviewed Smith's mother, Linda McBrearity. Ms. McBrearity stated that Smith was involuntarily committed to Acadia Hospital in April 2005 for a period of two weeks. (Id. ¶ 6.) Later that day Tall met with Smith, who acknowledged that he had been involuntarily committed to Acadia Hospital in April of 2005. (Id. ¶ 7.)

On August 19, 2005, the Government filed its Motion for Disclosure of Commitment Records and to Seal in which it sought disclosure of the blue paper authorizing the defendant's involuntary commitment to Acadia Hospital in April 2005. (Ex. A.) I granted the Government's motion that same day. (Id.) A copy of the Order was served on Acadia Hospital and on August 30, 2005, the Government received a copy of Smith's blue paper reflecting his April 2, 2005, involuntary commitment. (Ex. B (submitted under seal).)

## DISCUSSION

### A.   The Motion to Suppress

Smith's motion to suppress is based upon the argument that agent Tall violated state law, specifically 34-B M.R.S.A. § 1207(4), when he reviewed computer records and police reports related to transporting Smith from EMMC to Acadia Hospital for involuntary committal. Subsection four makes it a Class D crime to violate any of the confidentiality provisions within § 1207.  Section 1207(1) reads:

> 1. GENERALLY.  All orders of commitment, medical and administrative records, applications and reports, and facts contained in them, pertaining to any client shall be kept confidential and may not be disclosed by any person . . . .

Section 1207 then lists exceptions to that general rule, but, argues Smith, none of the exceptions have any applicability to the police reports and computer records reviewed by Tall.  In Smith's view, although in this case the application for commitment with its judicial endorsement was obtained pursuant to a court order on the Government's motion for disclosure, one of the

3

enumerated exceptions, id. § 1207(1)(C), Tall had already violated the statute by using the Bangor Police Department's report and records to obtain that order from me, which tainted the subsequent court order.

The legal basis for Smith's argument is not that Tall violated the Fourth Amendment. Rather he relies upon United States v. Sutherland, 929 F.2d 765 (1st Cir. 1991), and its progeny, United States v. Wilson, 36 F.3d 205 (1st Cir. 1994), a curious pair of cases to cite in support of his proposition that suppression of the police report and records and the resulting involuntary commitment application is warranted. Wilson simply acknowledged that Sutherland leaves room for the court to exercise its supervisory powers to exclude evidence where federal officials seek to capitalize on an "extreme case of flagrant abuse of the law" by state law enforcement officials.[3] Wilson, 36 F.3d at 208. Neither case actually ordered that evidence seized in violation of state law be suppressed.

In Sutherland we learn that under Massachusetts law the warrantless interception of oral and wire communications is prohibited absent consent of all the parties. 929 F.2d at 769. The Massachusetts Supreme Judicial Court has held that engaging in warrantless surveillance violates the right of privacy protected by the Massachusetts Declaration of Rights, even though it does not violate the federal Constitution. Id. (citing Commonwealth v. Blood, 507 N.E.2d 1029, 1032-35 (Mass. 1987)). Tape recordings therefore cannot be used as substantive evidence in Massachusetts prosecutions pursuant to a state, judicially crafted, exclusionary rule. Id. As a

---

[3] At one point in his initial memorandum Smith argues this case is distinguishable from Wilson because this case involves a federal investigator who "violated State law as an accessory to the Bangor Police disclosure of the reports." (Docket No. 21 at 4.) However, Tall states in the opening paragraph of his affidavit: "I am a Detective with the Bangor, Maine Police Department and am currently assigned as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives." I am not convinced that his hybrid status changes the analysis under Wilson and Sutherland. Smith does not explain in his memorandum why the distinction makes a difference and it is not readily apparent to me why Tall's status as a "federal" law enforcement officer, to the extent he could be so considered, would impact the analysis in a way favorable to Smith. Both Wilson and Sutherland make clear that "[e]vidence obtained in violation of neither the Constitution nor federal law is admissible *without regard to state law*." Wilson, 36 F.3d at 208 (quoting Sutherland, 929 F.2d at 769) (emphasis added).

result of an appeal from an *in limine* order entered against one of Sutherland's co-defendants named Fini, the Massachusetts Supreme Court ruled that the taped conversations could not even be used for impeachment purposes. In the face of that ruling the state dismissed its charges and Sutherland, Fini, and a third defendant were indicted by a federal grand jury. The First Circuit Court of Appeals went to considerable lengths to explain the non-applicability of the so called "silver platter" exception doctrine, wherein a federal court dismisses a federal prosecution because of a violation of state law by state law enforcement officers. Id. at 771 ("We write here to clarify that, in this circuit, there is no such exception. We prefer this approach to forcing courts into intricate analytical maneuvers to escape a poorly conceived exception.").

    If the facts of Sutherland did not give rise to a case of "flagrant abuse," then this case certainly does not. First, as the Government notes in its memorandum, there is an argument about whether § 1207, located in a chapter pertaining to the Department of Mental Health and Retardation, and relating to control of the conduct of state institutions and related community agencies providing services to the mentally ill, has any application at all to police agencies engaged in the process of responding to calls for assistance regarding preadmission transportation of individuals. Second, no Maine court anywhere, in any reported decision I could find, has ever held that a violation of § 1207 would result in the suppression of evidence in a criminal proceeding. Nor is there a state statutory provision regarding the exclusion of such evidence from criminal proceedings. Even assuming that Tall violated the confidentiality prohibition by using the information in the police report to obtain the federal court order, there is no reason to presume that the State of Maine would craft a state exclusionary rule in criminal proceedings against Smith. Thus, this case does not even begin to approach the factual scenario of Sutherland, which was itself insufficient to support a finding of "flagrant abuse." I can find no

legal basis for suppressing the police report and records or the blue paper because of an alleged violation of state law.

**B.     Supplemental Motion to Suppress and Motion to Dismiss**

Smith's supplemental motion to suppress or dismiss is grounded on federal regulations rather than state law.  Pursuant to 42 U.S.C. § 290dd-2 and the regulations promulgated thereunder, alcohol and drug abuse records are confidential and can only be made subject to disclosure by a court order under certain circumstances.  In this case Smith claims that the copy of the emergency involuntary admission application was provided in violation of federal regulation because the application describes the reason for the requested admission as an "amphetamine overdosed psychosis" and the Government did not obtain a court order that complied with the applicable regulations.[4]   Of course, when the Government filed the motion to obtain a court order regarding the application for commitment, neither it nor this Court had any reason to know that drug abuse information would appear in the application.  If the release of information pertaining to drug abuse on the blue paper application is a violation of the federal regulation, the Maine state Probate Judge who endorsed the application was also a recipient of the same confidential information in violation of the federal regulation.  It seems unlikely to me

---

[4]     The parties expend some ink discussing whether or not the charge in this case, providing false information on a federal firearms application, is a "serious crime" within the regulatory definition.  The regulations provide that a court may order disclosure of patient records when "[t]he crime involved is extremely serious, such as one which causes or directly threatens loss of life or serious bodily injury including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, and child abuse and neglect."  See 42 C.F.R. § 2.65(d)(1).  The Government did not seek this court order under that regulation and I did not issue the order for disclosure in reliance upon any determination that I made under that regulation.  The Government moved for disclosure of the application and related court orders pursuant to 28 U.S.C. § 1651 ("All-Writs Act"), 45 C.F.R. §  164.512(a)(1) (the HIPAA regulations), and applicable state law.  As the magistrate judge who issued the order upon which the hospital and the Government apparently relied in good faith, I note that I never for one moment considered whether the application might mention the word "drugs" and therefore became a patient record within in the meaning of  42 C.F.R. § 2.65(d).  As I am not persuaded that state court emergency commitment applications become patient records within the meaning of 42 U.S.C. § 290dd-2, I see no reason to make a determination now whether this alleged crime is sufficiently "serious" to fit within the regulation.  In any event if I, as the magistrate judge who issued the order of disclosure, erred as a matter of law under 42 C.F.R. § 2.65 (d)(1), suppression or dismissal of the charges is not the remedy as is established by the cases cited by the Government and discussed herein.

6

that a state court-authorized form for involuntary commitment is the type of drug abuse treatment "record" contemplated by the federal regulation and therefore I think the federal regulation has no applicability to this case.

However, if I accept Smith's premise that the involuntary committal application is covered by the regulations he cites, the fact remains that absent a constitutional violation, a violation of a statute or regulation does not generally entitle a criminal defendant to the suppression of evidence unless that statute or regulation provides for such a remedy. United States v. Li, 206 F.3d 56, 61 (1st Cir. 2000); see also United States v. Thompson, 936 F.2d 1249, 1252 (11th Cir. 1991) ("Absent a specific reference to an exclusionary rule, it is not appropriate for the courts to read such a provision into [an] act."); United States v. Kington, 801 F.2d 733, 737 (5th Cir. 1986) (asserting that rights created by Congress are not enforceable by suppression unless Congress has specifically provided for that remedy). The same is true with respect to ordering the dismissal of an indictment based upon a violation of a statute or an act. Li, 206 F.3d at 62.

Finally, Smith argues that any statements he made to Erik Tall must be suppressed because his knowledge that he had been involuntarily committed could only have come from his review of his own drug treatment records and, thus, his oral statements are likewise a violation of the confidentiality regulations. There is no evidentiary basis in this record to support that factual assertion, but assuming for one moment that the factual assertion is true, the Government does not seek to use Smith's drug treatment records to substantiate a criminal prosecution in violation of the drug abuse confidentiality rules. The only relevant statement made by Smith was his acknowledgement to Tall that he had been involuntarily committed. The reason for the commitment, whether drug abuse or some other cause, does not substantiate the criminal charge

7

under investigation by the Government. Thus, the use of Smith's voluntary statement regarding the mere fact of his involuntary commitment does not run afoul of 42 C.F.R. § 2.23(b)'s prohibition against using a patient's own access to his records to initiate or substantiate criminal charges or to conduct a criminal investigation of the patient. The Government does not need any statement from Smith regarding his drug abuse to substantiate the charge in this case. There is no reason to suppress his oral acknowledgement that he was committed to a mental institution.

**Conclusion**

Based upon the foregoing I recommend the court **DENY** both the motion to suppress (Docket No. 21) and the supplemental motion to suppress and motion to dismiss (Docket No. 23).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: January 6, 2006